IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

KEITH ALLEN SIZEMORE, et al.,

        Plaintiffs,

v.                                    CIVIL ACTION NO. 2:19-cv-00639

S. R. MORRIS, et al.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the court are Defendants Motions to Dismiss [ECF Nos. 5, 8]. For the reasons that follow, the Motions are **DENIED in part and GRANTED in part**.

### I. Background

Plaintiff Keith Allen Sizemore and his son, Plaintiff Shane Allen Sizemore, residents of Oak Hill, Fayette County, West Virginia, brought the current action against the following four defendants: S.R. Morris, employed by the Fayette County Sheriff's Department and assigned to the Central West Virginia Drug Task Force; C.A. Young, employed by the Oak Hill Police Department and assigned to the Central West Virginia Drug Task Force; the Fayette County Commission; and the Town of Oak Hill.

According to the complaint, on July 10, 2017, Defendant Morris received a tip that Plaintiff Keith Sizemore was transporting heroin in a pickup truck. Compl. [ECF No. 1] ¶ 5–6. Officers conducted a traffic stop on Plaintiff's truck, which was carrying

him and Melissa Figueroa, the significant other and friend of Plaintiff's daughter. *Id.* at ¶ 7. No heroin was found in the truck. *Id.* Following the search, Defendant Morris interviewed Plaintiff at his residence and noticed Figueroa inside Plaintiff's home with his daughter. *Id.* at ¶ 9.

Nearly two months later, Defendants Morris and Young observed Figueroa sell $80 of heroin in a Dollar Tree parking lot and then leave in a gold Ford Taurus. *Id.* at ¶ 11. Afterwards, Figueroa's buyer agreed to become a confidential information ("CI") for Defendants. *Id.* at ¶ 12. Defendants Morris and Young arranged a second heroin buy with the CI and Figueroa for later the same day. *Id.* at ¶ 13.

At some point after the first drug buy but prior to the second buy, Defendants Morris and Young drove by Plaintiff Sizemore's residence and saw the same gold Ford Taurus in which Figueroa had left the Dollar Tree Parking lot parked in front of Plaintiff's residence. *Id.* They did not see Figueroa. *Id.*

Later that day, after the second buy with the CI was set, Defendants Morris and Young positioned themselves outside of Plaintiffs' residence. *Id.* at ¶ 14. They observed Figueroa and her sister leave Plaintiffs' residence and get into a dodge Neon, which was parked where the gold Ford Taurus had been earlier. *Id.* The Neon drove to the Dollar Tree parking lot with Figueroa as a passenger, and the second drug transaction took place. *Id.* at ¶ 15. After the buy, "the officers observed the Dodge Neon return to the [P]laintiff's residence but did not observe Melissa Figueroa exit the vehicle nor enter the residence." *Id.*

Following the second buy, Defendant Morris "went to the Fayette County Sheriff's Department to draft an application for a search warrant for [P]laintiff's residence." *Id.* at ¶ 16. The affidavit used the term "we," referring to both Defendants Morris and Young. *Id.* at ¶ 26.

According to the complaint, Defendant Morris attested to several false statements in the affidavit, including that he and Defendant Young "had prior knowledge that Melissa Figueroa lived or stayed at the [P]laintiff's residence." *Id.* at ¶ 18. The complaint also alleges Defendant Morris falsely attested that he and Defendant Young witnessed Figueroa enter Plaintiff's residence after the second buy. *Id.* at ¶ 19. Further, Plaintiffs allege Defendants omitted that the heroin involved in Figueroa's transactions was a small amount, sold for $80, which could be hidden on her person. *Id.* at ¶ 25. Finally, the affidavit allegedly falsely added that "Members of the Central West Virginia Drug Task Force have received numerous complaints about the sale and distribution of heroin from this residence." *Id.* at ¶ 29.

The magistrate, Defendant Young's mother, signed the search warrant around 9:00 pm the same day as the drug buys, and the Defendant officers immediately executed the warrant at Plaintiffs' residence. According to the complaint,

> Plaintiff was sitting in his living room when the officers arrived. His 16 year old son was in the home with him. Officers threw a concussion grenade through his living room window, then busted through his door with a sledgehammer. They handcuffed [P]laintiff, and put him on his porch, took his son from him, and proceeded to search his house.

*Id.* at ¶ 20. The officers found heroin, two firearms, and about $2,000 in cash and arrested Plaintiff Keith Sizemore. *Id.* at ¶ 21. "What they did not find, however, was

3

Melissa Figueroa—nor any of her possessions. Nor did they find the prerecorded money from the second buy with the informant." *Id.* "As a result of the illegal search and the ensuing civil forfeiture proceedings, [P]laintiff lost his home, which was confiscated; he lost his 2017 pickup truck, which was confiscated; and he spent a substantial amount of time incarcerated." *Id.* at ¶ 33.

Plaintiff Keith Sizemore filed a Motion to Suppress, which Judge Copenhaver of the Southern District of West Virginia granted, and subsequently the United States dismissed all charges against Plaintiff. *Id.* at ¶ 31–32. In granting the Motion to Suppress, the Court found that "neither [Defendants Morris nor Young] had any such prior knowledge" that Figueroa lived or stayed at Plaintiff's residence, nor did they see Figueroa enter the residence after the second drug buy. *Id.* at ¶ 18–19 (quoting *United States v. Sizemore*, 2:18-cr-198, ECF No. 58 at 6). In addition, the Court found "there is not an iota of evidence to support [the] gratuitous allegation" that the Central West Virginia Drug Task Force "received numerous complaints about the sale and distribution of heroin from [Plaintiff's] residence." *Id.* at ¶ 29 (quoting *United States v. Sizemore*, 2:18-cr-198, ECF No. 58 at 11).

Judge Copenhaver found the false statements were "calculated to mislead the magistrate into the belief that there was probable cause to believe heroin could be found at that location." *Id.* at ¶ 41. In granting the Motion to Suppress, the Court held that

> without the false statement that Figueroa lived or stayed at the Sizemore house, coupled with the false statement that the officers had prior knowledge

4

of that allegation, there was simply no adequate ground on which to base the search of another man's house.

*Id.* at ¶ 31 (quoting *United States v. Sizemore*, 2:18-cr-198, ECF No. 58 at 13–14).

On September 6, 2019, Plaintiffs brought the current action against Defendants alleging the following claims: (Count I) 42 U.S.C. § 1983 Unreasonable Seizure against Defendants Morris and Young and (Count II) State Law Negligence against the Fayette County Commission and the Town of Oak Hill. Defendants Morris and the Fayette County Commission brought a Motion to Dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure on November 19, 2019. [ECF No. 5]. Defendants Young and the Town of Oak Hill separately brought a Motion to Dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure on December 6, 2019. [ECF No. 8]. I will address both motions now.

## II.  Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "When ruling on a motion to dismiss, courts must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of [P]laintiff." *Farnsworth v. Loved Ones in Home Care, LLC*, No. 2:18-CV-01334, 2019 WL 956806, at *1 (S.D.W. Va. Feb. 27, 2019) (citing *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)).

5

To survive a motion to dismiss, the plaintiff's factual allegations, taken as true, must "state a claim to relief that is plausible on its face." *Robertson v. Sea Pines Real Estate Co.*, 679 F.3d 278, 288 (4th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The plausibility standard is not a probability requirement, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Although "the complaint must contain sufficient facts to state a claim that is plausible on its face, it nevertheless need only give the defendant fair notice of what the claim is and the grounds on which it rests." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 777 (4th Cir. 2017). Thus, "a complaint is to be construed liberally so as to do substantial justice." *Id.*

The court construes the motions before us as a motion to dismiss and will only consider the pleadings and any "documents incorporated into the complaint by reference, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014). The complaint incorporates Judge Copenhaver's opinion granting Plaintiff's Motion to Suppress and the Affidavit relied upon for the search warrant. Thus, I will consider these, including the transcript of the Motion to Suppress hearing. Ex. 1–2 [ECF No. 8].

III. Discussion

a) Count I, 42 U.S.C. § 1983 Unreasonable Seizure

In Count I, Plaintiffs allege Defendants Morris and Young violated their Fourth Amendment protections against unreasonable search and seizure by

6

executing a search warrant without probable cause. Defendants Young and Morris argue they are entitled to qualified immunity.

When a law enforcement officer asserts qualified immunity as a defense, a court must consider two questions. First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Miller v. Prince George's Cty., MD*, 475 F.3d 621, 626–27 (4th Cir. 2007). If yes, next, the court must determine whether the right was "clearly established" at the time of the events at issue. *Id.*; *see also Saucier v. Katz*, 533 U.S. 194, 201–02 (2001).

As a preliminary matter, I find Defendants Morris and Young are not precluded from litigating their qualified immunity defense because they did not have the opportunity to litigate the issue during Plaintiff Keith Sizemore's Motion to Suppress hearing. *See In re McNallen*, 62 F.3d 619, 624 (4th Cir. 1995) ("Collateral estoppel precludes relitigation of an issue decided previously in judicial or administrative proceedings provided the party against whom the prior decision was asserted enjoyed a full and fair opportunity to litigate that issue in an earlier proceeding."). In determining whether Defendants' conduct violated a constitutional protection, some of my reasoning will parallel Judge Copenhaver's reasoning used to grant Plaintiff Keith Sizemore's Motion to Suppress. However, qualified immunity also requires an additional step—whether the constitutional violation was clearly established. Because of the different standards applied to qualified immunity versus

a motion to suppress, I must make my own determinations in deciding Defendants' qualified immunity defense.

First, I must note this Court is at a loss to understand Defendants' assertion that because this case involves "a search warrant, rather than an arrest warrant," it therefore "does not require a showing of probable cause." Defs.' Mem. Mot. Dismiss [ECF Nos. 6, 9]. More confusing, Defendants cite favorably to *Illinois v. Gates*, 462 U.S. 213 (1983), a case which describes the standard for probable cause in a search warrant. Though puzzling that this is necessary to explain to a member of the bar, "the Fourth Amendment requires that no search warrant shall issue without probable cause." *United States v. Daughtery*, 215 F. App'x 314, 316 (4th Cir. 2007). Indeed, the text of the Fourth Amendment, which has been in place since the adoption of our Constitution and Bill of Rights, states that individuals have the right to be protected "against unreasonable searches and seizures," and "no Warrants shall issue, *but upon probable cause*, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV (emphasis added). And a search and seizure without probable cause is unreasonable. *Miller*, 475 F.3d at 627. This is especially true for searches of the home, which "is first among equals" regarding the Fourth Amendment. *Yanez-Marquez v. Lynch*, 789 F.3d 434, 464–65 (4th Cir. 2015) (quoting *Florida v. Jardines*, 569 U.S. 1, 6 (2013)).

Probable cause is determined by the "totality of the circumstances" test, and a magistrate is to make a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit,… there is a fair probability that contraband

8

or evidence of a crime will be found in a particular place." *United States v. Lalor*, 996 F.2d 1578, 1580 (4th Cir. 1993) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "The nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence." *United States v. Allen*, 631 F.3d 164, 173 (4th Cir. 2011). "When there is reason to believe that a person is unlawfully dealing in controlled substances, the probability exists that he is keeping evidence of it where he resides." *Brooks v. United States*, No. CIV.A. 3:05-0163, 2011 WL 1043550, at *15 (S.D.W. Va. Feb. 15, 2011) (citing *United States v. Grossman*, 400 F.3d 212, 217 (4th Cir.2005)). In *Grossman*, the court found a sufficient nexus between the defendant's alleged drug offenses and the residences searched based on a reliable informant, the defendant's background check for drug felonies, and the officer's observations of the defendant. *Grossman*, 400 F.3d at 214.

Here, although Plaintiffs' house was searched pursuant to a warrant, Plaintiffs argue the search and seizure was unreasonable because the warrant followed from an affidavit with false allegations and omissions. To succeed, Plaintiffs must prove Defendants "deliberately or with a 'reckless disregard for the truth' made material false statements in [their] affidavit" which were necessary to the magistrate's finding of probable cause. *Miller*, 475 F.3d at 627 (quoting *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978). Or, Plaintiffs must show Defendants omitted "material facts with the intent to make, or with reckless disregard of whether they thereby made, the affidavit misleading.'" *Id.* "To determine materiality, a court must excise the offending

9

inaccuracies and insert the facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would establish probable cause." *Id.* (internal quotations removed). "If the 'corrected' warrant affidavit establishes probable cause, no civil liability lies against the officer." *Id.*

"Reckless disregard can be established by evidence that an officer acted with a high degree of awareness of a statement's probable falsity," meaning an officer had "serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *Id.* (internal quotations removed). For omissions, "reckless disregard can be established by evidence that a police officer failed to inform the judicial officer of facts [he] knew would negate probable cause." *Id.* (internal quotations removed). However, negligence or innocent mistake "will not provide a basis for a constitutional violation." *Id.* (quoting *Franks*, 438 U.S. at 171).

In this case, Plaintiffs allege Defendants made false allegations in the affidavit, including that Defendants had knowledge that Figueroa lived at Plaintiffs' residence, that Defendants witnessed Figueroa return to Plaintiffs' residence after the second drug buy, and that Defendants had received complaints about drug activity at Plaintiff's residence. Further, Defendants omitted in the affidavit that Figueroa's drug transactions were for a small amount of heroin.

Taking the allegations in the complaint as true, Defendants' false statements and omissions were necessary or material for the finding of probable cause to search Plaintiffs' house for heroin. Without these statements, it was not reasonable for Defendants to believe that Figueroa lived at Plaintiffs' residence or that Plaintiff

10

Keith Sizemore had heroin in his house based on Defendants' limited observations. The officers had searched Plaintiff's truck two months earlier and did not find any heroin. In addition, the omission of the small amount of drugs Figueroa sold was material to whether Figueroa was using Plaintiffs' residence to store heroin. Thus, there was not a sufficient nexus for the place to be searched and the items to be seized. *See Allen*, 631 F.3d at 173; *Grossman*, 400 F.3d at 214. And a "corrected" affidavit without the misrepresentations would not have provided probable cause to think that heroin could be found at Plaintiffs' residence. Without the misrepresentations, "[t]here was simply no adequate ground on which to base the search of another man's house." Compl. [ECF No. 1] ¶40; *see also Yanez-Marquez*, 789 F.3d at 464 ("But when it comes to the Fourth Amendment, the home is first among equals.").

Finally, at the very least, Defendants' statements and omissions could be seen as "reckless disregard" because, according to the complaint, Defendants swore in the affidavit they had prior knowledge that Figueroa resided at Plaintiffs' residence "when in fact neither of the defendant police officers had such knowledge." Compl. [ECF No. 1] ¶36. They also falsely swore they saw Figueroa return to Plaintiffs' residence after the second drug buy. *Id.* These facts would have provided a nexus between Figueroa's drug transactions and Plaintiffs' residence. Given the limited facts connecting Figueroa to residing at Plaintiffs' home, these statements would have been important to the magistrate in issuing a search warrant of Plaintiffs' home. By including them, Defendants' misled the magistrate into finding probable cause.

11

Defendants Morris and Young argue they are entitled to qualified immunity because the search warrant was based upon a reasonable mistake about Figueroa's residency. However, "[a]n officer who intentionally or recklessly puts lies before a magistrate, or hides facts from him, violates the Constitution unless the untainted facts themselves provide probable cause." *Miller*, 475 F.3d 621, 630–31. Though Defendants are correct that qualified immunity would apply had the corrected affidavit still provided probable cause for the search warrant, here, it does not.

Defendant Young, however, argues he is entitled to qualified immunity because he did not participate in violating Plaintiffs' constitutional rights. He argues that he was not "involved in drafting or submitting an unlawful affidavit in order to obtain a search warrant." Defs.' Mem. Mot. Dismiss [ECF No. 9] 7. Though the affidavit uses the term "we" and refers to both Defendants Young and Morris, Plaintiffs have not plead any facts showing that Defendant Young was involved in the drafting of the affidavit. Nor have Plaintiffs plead facts stating that Defendant Young had knowledge of the misrepresentations in the affidavit. Therefore, Defendant Young's Motion to Dismiss the § 1983 claim against him is **GRANTED**.

As previously explained, Defendant Morris violated Plaintiffs' Fourth Amendment protections. Thus, the next question is whether the violated right was clearly established at the time of the events in question. "[I]t has long been established that when law enforcement acts in reckless disregard of the truth and makes a false statement or material omission that is necessary to a finding of probable cause, the resulting seizure will be determined to be unreasonable." *Gilliam*

v. *Sealey*, 932 F.3d 216, 241 (4th Cir. 2019); *see Franks*, 438 U.S. at 157. As the Fourth Circuit has explained, "a reasonable officer cannot believe a warrant is supported by probable cause if the magistrate is misled by statements that the officer knows or should know are false." *Miller*, 475 F.3d at 632 (quoting *Smith v. Reddy*, 101 F.3d 351, 355 (4th Cir.1996)).

Accordingly, Defendant Morris's Motion to Dismiss Count I is **DENIED** and Defendant Young's Motion to Dismiss Count I is **GRANTED**.

### b) Count II, State Law Negligence Claim

Plaintiffs also allege a state law negligence claim against the Fayette County Commission and the Town of Oak Hill for failure to supervise and train.

"Under West Virginia law, to state a claim for negligent supervision or training, a Plaintiff must show that a municipal defendant failed to properly supervise an employee officer and, as a result, the employee officer proximately caused injury to the plaintiff." *Lizotte v. Finley*, No. 2:18-CV-01389, 2019 WL 2865864, at *8 (S.D.W. Va. July 2, 2019) (internal quotations removed). "[A] claim for negligent training or supervision is governed by general negligence principles." *Id.* (citing *Taylor v. Cabell Huntington Hosp., Inc.*, 208 W.Va. 128, 134 (2000). Unlike section 1983 claims, negligent training or supervision "does not require a showing of 'deliberate indifference,' nor does it require that she establish a widespread 'custom or policy.'" *Id.* (quoting *Gilco v. Logan Cty. Comm'n*, 2:11-cv-0032, 2012 WL 3580056, at *8 (S.D.W. Va. Aug. 17, 2012)). "[T]he state law standard is less 'stringent' than its federal analogue." *Gilco*, No. CIV.A. 2:11-0032, 2012 WL 3580056, at *8–9.

Here, Plaintiffs allege "by making false statements and material omissions in their affidavit to the Magistrate Court," Defendants Morris and Young "were acting in accordance with their training and supervision." Compl. [ECF No. 1] ¶ 47. Plaintiffs allege in the complaint that

> Effectively unsupervised and undertrained by their employers, the defendant officers were operating outside the bounds of the U.S. Constitution, in a scheme primarily concerned with seizing assets to be converted to their own ownership (the [Fayette County Commission] and Town of Oak Hill) through the civil forfeiture statute. Since the political subdivision defendants themselves were profiting from the scheme, they instituted an official policy of "turning a blind eye" to the officers' activities, and allowed an environment of lawlessness to exist, with no supervision, and no concern towards training.

*Id.* Plaintiffs further allege it was reasonably foreseeable that Plaintiffs "would be damaged by being subjected to unreasonable searches and seizures based on a pattern, practice and activity of providing false information to the Magistrate Court of Fayette County in order to secure search warrants unsupported by the law." *Id.* at ¶ 46.

Defendants argue that Plaintiffs' negligence claim is conclusory and should be dismissed. While Plaintiffs "will certainly need to prove additional facts to prevail, the court cannot say that it is implausible that the [the Fayette County Commission and the Town of Oak Hill] inadequately trained/supervised the [officers], and that such failure caused the deputies to commit the acts of which they are accused." *See Lizotte*, No. 2:18-CV-01389, 2019 WL 2865864, at *9 (denying a motion to dismiss where Plaintiffs alleged the "Fayette County Sheriff and Fayette County Sheriff's Department negligently failed to train, instruct and supervise his/their agents and

14

employees so as to prevent the events which occurred in this matter, to wit, the violent apprehension, arrest, detention, and filing of charges without probable cause"); see *Gaylord v. City of Beckley, W. Virginia*, No. 5:18-CV-00177, 2018 WL 3581093, at *5 (S.D.W. Va. July 25, 2018) (denying motion to dismiss where Plaintiff's complaint did "not contain extensive detail about the Beckley Police Department's training and supervision programs," but it did allege "that officers routinely charge[d] people with obstruction without probable cause" and the police department "failed to adequately train officers regarding probable cause and appropriate use of the obstruction charge"); see also *Perdue v. City of Charleston*, No. 2:11-cv-01011, 2012 U.S. Dist. LEXIS 87492, at *12 (S.D.W. Va. June 25, 2012) (denying motion to dismiss where the complaint claimed the City failed to adequately "train, supervise, and discipline its police officers regarding the circumstances which constitute probable cause for an arrest and the necessity of conducting a reasonable investigation" along with an attempt to cover up the incident).

Defendant Oak Hill also argues it is immune from suit. West Virginia Code § 29-12A-5(a)(3) provides that "[a] political subdivision is immune from liability if a loss or claim results from execution or enforcement of the lawful orders of any court." *Roberts v. Whitt*, No. 5:17-CV-03845, 2018 WL 2392544, at *3–4 (S.D.W. Va. May 24, 2018). Here, Plaintiffs allege the failure to train and supervise by the Town of Oak Hill and the Fayette County Commission, who were the employers of Defendant officers, led to the unreasonable search and seizure. Although a search warrant was involved, the claim does not arise from the execution of the search warrant, but the

15

negligent training and supervising prior to issuing the warrant. Therefore, Defendant Oak Hill is not immune from this claim. *See id.* (denying a motion to dismiss where the claim arose "from the alleged negligent training and the subsequent failure to knock and announce *prior* to executing the search warrant").

Defendants also argue that Count II should be dismissed because it is barred under the West Virginia Contraband Forfeiture Act. However, Plaintiffs are not pleading a claim under the West Virginia Contraband Forfeiture Act but rather a state law negligence claim.

At this stage, in taking all the allegations in the complaint as true, this Court **DENIES** Defendants' Motions to Dismiss as to Count II.

### IV. Conclusion

For the reasons stated herein, Defendants Motions to Dismiss [ECF Nos. 5, 8] are **DENIED in part and GRANTED in part**. Defendants Morris, Fayette County Commission, and Town of Oak Hill's Motions to Dismiss are **DENIED**. Defendant Young's Motion to Dismiss the § 1983 claim against him for Unreasonable Seizure is **GRANTED**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: January 15, 2020

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE